UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**Civil Action No.** 1:23-cv-10701

---------------------------------------------------------------

STYLE STITCH, INC.

        Plaintiff,

-against-

THE AVYAN GROUP, LLC.

        Defendant.

---------------------------------------------------------------

**SECOND AMENDED COMPLAINT**

**ECF CASE**

## COMPLAINT

Plaintiff Style Stitch, Inc. ("SSI") by and through its undersigned attorney, allege upon knowledge with respect to itself and its own actions and upon information and belief as to all other matters as and for their Complaint against Defendant The Avyan Group, LLC ("TAG") as follows:

## NATURE OF THIS ACTION

1. This is a garden variety case of willful breach. Defendant is a wholesaler of apparel to national retailers. Plaintiff is an overseas manufacturer of apparel, based in India. Defendant engaged Plaintiff to produce large volumes of apparel at deeply inexpensive prices due to the currency exchange, and then Defendant sold the said apparel at a large profit to national retailers in the United States. Yet, Defendant refuses to honor their purchase orders and pay the Plaintiff for apparel products shipped from India by the Plaintiff, then imported into the United States and wholesaled by the Defendant for profit.

**[This Space Is Intentionally Left Blank.]**

## THE PARTIES

2. Plaintiff is a corporate entity organized under the corporate and business laws of India, with its principal place of business at Plot No. 374, Sector 37, Udyog Vihar, Phase-VI, Khandsa, Gurgaon, Haryana, India, 122001.

3. Based on information belief, Defendant is a New Jersey corporation with its corporate office listed as 5 Cambridge Way Princeton Junction, NJ, 08550-1813 United States, and showroom office space in New York City's famed Garment Center in mid-town Manhattan.

## JURISDICTION AND VENUE

4. Plaintiff brings this Complaint pursuant to 28 U.S.C. § 1332(a)(1), as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this civil action occurred in this district.

6. Venue and jurisdiction is proper in this judicial district pursuant to 28 U.S.C. § 1391 et al., because Defendant conducts business in this judicial district (at least in the Garment Center of New York City), substantial part of the events giving rise to the claims herein occurred in the Southern judicial district (including but not limited to the initiation of wire transfers to electrically transmit funds out of this district), this Court has personal jurisdiction over the Defendant, and the Plaintiff was harmed by Defendant's conduct within the concerned district.

## FACTUAL ALLEGATIONS

7. Sumit Chowdhary is an experienced executive in the apparel business, having worked at various apparel wholesalers headquartered in New York City till the onset of the pandemic.

**[This Space Is Intentionally Left Blank.]**

8. In 2021, Mr. Chowdhary formed TAG as a start-up to conduct his business, which was the importation and wholesaling of women's apparel to various national retailers across the United States.

9. Mr. Chowdhary relied on his relationships with retail buyers, freight forwarders and overseas suppliers developed and procured over his years as an executive at various garment companies based in New York City.

10. Specifically, at TAG, Mr. Chowdhary used the services of Oriental Air Transport Service, Inc., located at 175-41, 148th Road, Jamaica, New York, 11434 ("New York Freight Forwarder"), with an email address of bibi.jfk@orientalair.com (implying that the New York Freight Forwarded works out of John F. Kennedy Airport in New York).

11. Mr. Chowdhary structured deals to have the freight for the apparel products paid at destination in New York, New York to and through the New York Freight Forwarder.

12. Based on information and belief, Mr. Chowdhary directly controls, conducts and executes on all aspects of TAG's business, including but not limited, to sales, accounting, production, and shipping.

13. To manage expenses and overhead, Mr. Chowdhary predominately operates the back end of his business out of his home in New Jersey.

14. In order to solicit, market, and advertise TAG's apparel products, the Defendant routinely and systematically rents showroom space in New York City's Garment Center to meet with retail buyers, display TAG's line, and solicit purchase orders from retailers.

15. Specifically, as told to Plaintiff's representative(s) by Mr. Chowdhary, TAG rents out showroom space in New York City's Garment Center for meetings to show and solicit garment products to TJX Companies, Inc., Burlington Stores, Inc., and/or Ross Stores, Inc.

16. At times, as told to Plaintiff's representative(s) by Mr. Chowdhary, Mr. Chowdhary visits Ross Stores, Inc.'s offices in mid-town Manhattan to review samples, discuss fit, and in general furtherance of TAG's business with Ross Stores, Inc.

17. Specifically, certain garment styles known as Rene and Raya and wholesaled by Mr. Chowdhary were refused and rejected by TJX Companies, Inc. Mr. Chowdhary subsequently closed out and sold the rejected Rene and Raya garments to Ross Stores, Inc.'s New York City based buyer(s).

18. In order to have competitiveness as a new start up business, Defendant would fill retailer orders by placing production in overseas factories known to Defendant based on past experience and relationships as an executive in other garment companies in New York.

19. Defendant routinely accepted and imported goods into the ports of New York, including but not limited to the products at issue (and identified) herein.

20. Plaintiff would serve as the consignor and TAG as the consignee on a bills of lading for the product coming into the Port of New York, United States, as the port of delivery and discharge.

21. More specifically, the Multimodal Transport Document ("MTD") No. TF/NYK/3320 establishes that TAG imported into the port of New York, United States from Plaintiff ladies apparel products weighing no less than 14,500 lbs., through Vessel and Voyage No. CMAMCGM IVANHOE V-3108, from container No. CMAU-6521931, possessing seal No.

C6078350, and TAG paid the New York Freight Forwarder collect for the release and delivery through the port of New York, United States for the said ladies apparel products.

22. The said MTD TF/NYK/3320, which delivered ladies garments to TAG from the Plaintiff, notes that the (i) destination port charges of New York, United States is on the account of the consignee (TAG), and (ii) freight charges are to be payable on collect through the New York Freight Forwarder.

23. Even more brazen, in the midst of misguidedly challenging Plaintiff's right to proceed with its instant claims in this Court, Defendant accepted and imported apparel products on or about July 7, 2024, via shipment possessing bill of lading No. MEDUEV236975, through another New York freight forwarder John F. Kilroy Co., Inc., based in Rosedale, New York, 11422.

24. Defendant dearly sought to do business with Plaintiff, who is an experience and seasoned exporter of garments and manufactures garments in India at sharp prices.

25. Given Defendant's past experience and role at other apparel companies, Plaintiff agreed to provide terms to Defendant.

26. From early 2022, Defendant begin issuing purchase orders to Plaintiff for apparel products which were wholesaled to retailers across the United States.

27. Through their truncate business relationship, Plaintiff produced and shipped to Defendant more than two hundred fifty thousand (250,000) units of garments.

28. Based on information and belief, Defendant has wholesaled the garments provided by Plaintiff for revenues over one million seven hundred fifty thousand dollars ($1,750,000).

29. TAG and/or Mr. Chowdhary would use a Chase Bank account in New York City to pay Plaintiff, where TAG (through Mr. Chowdhary's sole direction and control) would initiate

wire transfers through and/or using swift number CHASUS33DXXX. The said swift number relates back to Chase Bank in New York City, which TAG use(d) to conduct business, including paying the Plaintiff through its New York City bank account connected with the said swift number and bank.

30. Regrettably, despite successful delivery of the ordered products, Defendant has failed to render full payment on Plaintiff's nominal invoices.

31. At the least, Plaintiff issued invoices SSI/110/22-23; SSI/120/22-23; SSI/28/23-24; and SSI/36/23-24 (collectively, "Unpaid Invoices").

32. The apparel products underscoring the Unpaid Invoices was shipped to and discharged at the port of New York, through the New York Freight Forwarder.

33. The New York Freight Forwarder was paid for his services by Defendant.

34. The last of the Unpaid Invoices was issued on or before June 20, 2023.

35. The terms on purchase orders giving rise to the Unpaid Invoices state full payment no later than forty-five (45) days after the Bill(s) of Lading is issued.

36. The Unpaid Invoices, without interest, at a minimum, in the aggregate, seek payment for more than seventy-six thousand dollars ($76,000).

37. The Unpaid Invoices are delinquent and in default, overdue based on the terms of agreement between the Parties.

38. The Unpaid Invoices are the product of detailed purchase orders issued by Defendant to Plaintiff and a contractual relationship between the Parties.

39. Defendant interacted with and coordinated production and shipping of the apparel goods underscoring the Unpaid Invoiced with the Plaintiff, Defendant took delivery and possession of the said apparel products.

40. Defendant stated to Plaintiff and/or their representative(s) by and through Mr. Chowdhary, that Defendant's retail customers have terms for payment post-delivery.

41. Defendant stated to Plaintiff and/or their representative(s) by and through Mr. Chowdhary, that Defendant has an agreement with a discount factor with offices in New York City to draw down and collect on its invoicing at shipping so as not to have to wait on terms to get paid by the retainer customers.

42. Defendant has a factoring agreement with a discount factor financial intuition that has offices in New York City (which is not Chase Bank where Defendant holds and maintains a separate New York City based bank account as duly alleged above).

43. In addition to the Unpaid Invoices, Defendant ran up an unpaid bill for sampling, pattern making, garment development, and production / export coordination services, and now owes at least thirty-five thousand dollars ($35,000) for the stated services.

44. Mr. Chowdhary and/or Defendant flatly have refused to pay Plaintiff owed monies, despite wholesaling and collecting revenue on the product shipped to and accepted by Defendant.

**COUNT 1**
**BREACH OF CONTRACT**
**(Against Defendant)**

45. Plaintiff repeats and realleges paragraphs 1 through 44, above, as if set forth at length herein.

46. The purchase orders issued by Defendant and the related Unpaid Invoices are a valid and binding contract between TAG and SSI.

47. Plaintiff has substantially and materially performed its duties and obligations, and the Defendant took delivery and possession of the concerned apparel product.

48. Defendant has breached its contractual obligations, including without limitation, by defaulting on its payment terms.

49. As a result of Defendant's breach, inter alia, Plaintiff has been damaged by the unlawful acts of Defendant in an amount as yet unknown, but on information and belief, has caused damage to Plaintiff in excess of one hundred and eleven thousand dollars ($111,000).

## COUNT 2
## UNJUST ENRICHMENT
### (Against Defendant)

50. Plaintiff repeats and realleges paragraphs 1 through 49, above, as if set forth at length herein.

51. As outlined above, Defendant entered into and then breached binding purchase orders and contractual obligations owed to Plaintiff.

52. Plaintiff fulfilled its obligations, provided apparel products to Defendant, and said apparel products were wholesaled for revenue and profit by Defendant.

53. These actions have resulted in significant profits, revenue, and income to Defendant, and Defendant is not entitled to not pay Plaintiff for the Unpaid Invoices.

54. Defendant have improperly retained these monies and have no legitimate entitlement to these monies.

55. The taking and retention of these monies is both inequitable and unjust.

56. Defendant should be required to pay Plaintiff for the Unpaid Invoices.

## JURY DEMAND

Plaintiff demands a trial by jury as to all claims that may be tried to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

(a) Award actual, compensatory, and punitive damages, prejudgment and post-judgment interest, reasonable attorneys' fees, and costs in an amount to be determined at trial, but for no less than $111,000; and

(b) Such other and further relief as the Court may deem just and proper.

Dated: October 7, 2024
      New York, New York

Respectfully submitted,

**KAKAR, P.C.**

By: _____
Sumeer Kakar, Esq. (SK0913)
SK@KAKARLAW.NET
525 Seventh Avenue, Suite 1810
New York, NY 10018
Telephone: 646-760-7013
*Attorneys for Plaintiff*