USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/23/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STYLE STITCH, INC.,

              Plaintiff,

-against-

THE AVYAN GROUP LLC,

              Defendant.

1:23-cv-10701 (MKV)

**ORDER GRANTING**
**MOTION TO DISMISS**

MARY KAY VYSKOCIL, United States District Judge:

    Plaintiff Style Stitch, Inc. ("Style Stitch"), an India-based manufacturer of apparel, brings this action against Defendant The Avyan Group, LLC ("Avyan"), a New Jersey-based wholesaler of apparel, invoking the Court's diversity jurisdiction and asserting claims for breach of contract and unjust enrichment. Defendant moves to dismiss the Second Amended Complaint, [ECF No. 26, ("SAC")], for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure. For the reasons discussed below, Defendant's motion to dismiss is GRANTED.

## BACKGROUND[1]

    This case involves an alleged breach of contract between Defendant, a New Jersey-based wholesaler of apparel to national retailers, and Plaintiff, an overseas manufacturer of apparel based in India. SAC ¶¶ 1–3. Mr. Sumit Chowdhary ("Chowdhary") formed Defendant Avyan as a startup to conduct his business importing and wholesaling women's apparel to various national retailers across the United States. SAC ¶¶ 7, 8.

    Plaintiff alleges that Chowdhary directly controls all aspects of Defendant Avyan's business, including, but not limited to, its sales, accounting, production, and shipping operations.

---

[1] The facts stated herein are drawn from Plaintiff's Second Amended Complaint and are assumed to be true for purposes of this Motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

1

SAC ¶ 12. Plaintiff also alleges that Chowdhary operates Avyan from his home in New Jersey. SAC ¶ 13. Plaintiff alleges that Chowdhary would routinely rent showroom space in Manhattan's Garment Center to meet with potential buyers and solicit purchase orders for his products. SAC ¶ 14. Plaintiff also alleges that Chowdhary and/or Avyan maintained a bank account with a New York City branch of Chase bank that was used by Chowdhary and/or Avyan to conduct business including to pay Plaintiff. SAC ¶ 29. The Swift number associated with this bank account is CHASUS33DXXX. SAC ¶ 29. Defendant Avyan also allegedly has a factoring agreement with a discount factor based in New York City that is used to draw down and collect on invoicing at shipping. SAC ¶¶ 41–42.

Plaintiff alleges that Defendant Avyan imported and accepted garments from Plaintiff through the Port of New York. SAC ¶¶ 18–22, 32. Specifically, Plaintiff alleges that the Multimodal Transport Document No. TF/NYK/3320 shows that Vessel and Voyage No. CMAMCGM IVANHOE V-3108, container No. CMAU-6521931, which contained 14,500 pounds of women's apparel products produced by Plaintiff was imported to Defendant into the port of New York. SAC ¶¶ 21–22. Plaintiff further alleges that Defendant Avyan used the services of Oriental Air Transport Services, Inc., a freight forwarder based in Jamaica, New York, and John F. Kilroy, Inc., a freight forwarder based in Rosedale, New York to process these imports. SAC ¶¶ 10, 23. Plaintiff alleges that the port of discharge for this shipment was New York and that the freight charges for this shipment were payable through the New York freight forwarder. SAC ¶¶ 21–22.

Plaintiff alleges that despite the successful delivery of the ordered products, there are four outstanding invoices that Defendant has failed to pay. SAC ¶¶ 31, 34, 44.

## PROCEDURAL HISTORY

Plaintiff commenced this action by filing a Complaint, [ECF No. 1], and subsequently, with leave of the Court, filed an Amended Complaint. [ECF No. 14]. Thereafter, Defendant moved to dismiss the Amended Complaint, asserting lack of personal jurisdiction. [ECF No. 15]. The Court denied Defendant's first motion to dismiss without prejudice, permitted the parties to engage in jurisdiction discovery, and allowed Plaintiff to file a Second Amended Complaint properly alleging personal jurisdiction over Defendant. [ECF No. 20]. Thereafter, Plaintiff filed the operative complaint, [ECF No. 26], and Defendant again moved to dismiss the Second Amended Complaint for lack of personal jurisdiction. [ECF No. 31]. In support, Defendant submitted an affidavit of Chowdhary, [ECF No. 31–1], three exhibits [ECF Nos. 31–2, 31–3, 31–4], and a memorandum of law in support. [ECF No. 31–5, "Def. Mem.")]. Plaintiff opposed. [ECF No. 32, "Pl. Opp."])].

## LEGAL STANDARD

To survive a Rule 12(b)(2) motion, plaintiff "bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Gr. (USA) Inc. v. American Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) (citation omitted); *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) (Plaintiff "must establish the court's jurisdiction with respect to each claim asserted."). Prior to discovery, the Plaintiff only needs to make a *prima facie* showing of personal jurisdiction. *Charles Schwab Corp. v. Bank of America Corp.*, 883 F.3d 68, 82 (2d Cir. 2018); *Thomas v. Ashcroft,* 470 F.3d 491, 495 (2d. Cir. 2006); *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005) (citation omitted); *Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) (Courts require that "[a]t this stage of the proceedings" a plaintiff make a "*prima facie* showing that jurisdiction exists."). Where

jurisdictional discovery has been allowed, this showing must "include an averment of facts that, if credited, . . . would suffice to establish jurisdiction over the defendant." *McGraw-Hill Global Education Holdings, LLC v. Mathrani*, 295 F. Supp. 3d 404, 409 (S.D.N.Y. 2017) (alteration in original) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)); *see also In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013).

Notably, when deciding a 12(b)(2) motion to dismiss, the Court may consider materials outside the scope of the pleadings. *See Doherty v. Bice*, 101 F.4th 169, 172 (2d Cir. 2024); *Fleming v. ISCO Indus, Inc.*, 750 F. App'x 62, 63–64 (2d Cir. 2019) (citing *Dorchester Fin. Sec., In. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013)); *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (jurisdictional showing can be made through pleading, affidavits, and supporting materials). While the court will construe "pleadings and affidavits" in a light most favorable to the plaintiff, the plaintiff must offer more than "conclusory statements" in order to satisfy its burden. *Moussaoui v. Bank of Beirut and the Arab Countries*, No. 23-7332, 2024 WL 4615732, at *1 (2d. Cir. Oct. 30, 2024) (summary order); *see also Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998) ("[C]onclusory statements" without any supporting facts are insufficient). Furthermore, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Jazini* 148 F.3d at 185 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

## **DISCUSSION**

### I.    Subject Matter Jurisdiction

As an initial matter, this Court "ha[s] an independent obligation to determine whether federal jurisdiction exists in this case." *Bayerische Landesbank, New York Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 48 (2d Cir. 2012); *see also Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 361–62 (2d Cir. 2000) (the Court is obligated "to inquire as to subject matter jurisdiction and

satisfy itself that such jurisdiction exists."). The Second Amended Complaint, which asserts no federal claims, invokes the Court's diversity jurisdiction. SAC ¶ 4 ("Plaintiff brings this Complaint pursuant to 28 U.S.C. § 1332(a)(1), as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000."). Section 1332 requires complete diversity between all plaintiffs and all defendants. *See Agoliati v. Block 865 Lot 300 LLC*, No. 22-51, 2023 WL 405769, at *1 (2d Cir. Jan. 26, 2023) (summary order) ("Diversity jurisdiction requires complete diversity: no plaintiff and no defendant may be citizens of the same state."). "Furthermore, it is well established that the party seeking to invoke jurisdiction under 28 U.S.C. § 1332 bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete." *Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322–23 (2d Cir. 2001) (cleaned up).

For purposes of diversity, LLC defendants take on the citizenship of all of the LLC members. *See Bayerische Landesbank, New York Branch*, 692 F.3d at 49 (citing *Handelsman v. Bedford Vill. Assocs. Ltd. P'ship,* 213 F.3d 48, 51–52 (2d Cir. 2000)) ("Defendant [] is a limited liability company that takes the citizenship of each of its members."). Where a complaint does not plead the citizenship of a party LLC members, it fails to plead diversity jurisdiction. *See Infinity Consulting Grp., LLC v. American Cybersystems, Inc.*, No. 09-CV-1744, 2010 WL 456897, at *1 (E.D.N.Y. Feb. 3, 2010).

Here, the Second Amended Complaint merely alleges that Defendant The Avyan Group, LLC is a "New Jersey corporation with its corporate office listed as 5 Cambridge Way Princeton Junction, NJ, 08550-1813 Untied States, and showroom office space in New York City's famed Garment Center in mid-town Manhattan." SAC ¶ 3. This is plainly insufficient. However, Defendant in its motion to dismiss brief clearly states that "it is undisputed that the Defendant is a New Jersey limited liability company, and that its sole member, Sumit Chowdhary is a resident of

5 Cambridge Way, Princeton Junction, New Jersey." Def. Mem. at 2. Therefore, even though the Second Amended Complaint fails to properly allege diversity jurisdiction, at this stage, the Court is assured it has subject matter jurisdiction over this action and will consider Defendant's motion to dismiss based on lack of personal jurisdiction.

## II.     Plaintiff Has Not Sufficiently Plead Personal Jurisdiction Over Defendant

There are two types of personal jurisdiction a federal court can have over a foreign defendant: general and specific. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). General jurisdiction grants the court jurisdiction over any claim brought against the defendant and applies if the defendant's contacts are so "systematic and continuous as to render it essentially at home in the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 138 (2014) (internal citation omitted). Defendant is a New Jersey limited liability company, its sole member is a citizen of New Jersey, and its principal place of business is in New Jersey. *See* SAC ¶ 3; *see also* Def. Mem. at 2. As a result, Defendant's contacts with New York do not render it "at home" in this state and thus the Court cannot exercise general jurisdiction over Defendant. *See Daimler*, 571 U.S. at 138; *see also Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 3d 221, 226 (2d Cir. 2014) ("even a company's engagement in a substantial, continuous, and systematic course of business is alone insufficient to render it at home in a forum") (internal citations and alterations omitted).

Specific jurisdiction, on the other hand, grants jurisdiction over a party for a particular claim and can only be exercised if the long-arm statute of the forum state applies to the defendant and the claim at issue "arise[s] out of or relate[s] to the defendant's contacts' with the forum." *Ford Motor Company v. Montana Eighth Judicial District*, 592 U.S. 351, 359 (2021) (internal

6

quotations omitted).  "A district court's personal jurisdiction is determined by the law of the state in which the court is located."  *Spiegel v. Schulmann*, 604 F.3d 72, 76 (2d Cir. 2010).

Even if Plaintiff establishes that the Court has personal jurisdiction pursuant to the forum state's long-arm statute, Plaintiff must also show that the exercise of jurisdiction would not offend due process or "traditional notions of fair play and substantial justice."  *International Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316 (1945).

### A.     *New York's Long-Arm Statute Does Not Apply to Defendant*

Plaintiff asserts that Defendant is subject to jurisdiction pursuant to New York's Long Arm Statute, which states in pertinent part that a New York court can exercise personal jurisdiction over a non-domiciliary "who . . . transacts any business within the state or contracts anywhere to supply goods or services in the state" as to a cause of action arising from those acts.  C.P.L.R. § 302(a)(1). Plaintiff argues that Section 302(a)(1) applies for a number of reasons, including that: (1) Defendant used a New York bank account to make payments to Plaintiff, SAC ¶ 29; (2) Defendant used the Port of New York to import merchandise, SAC ¶ 21–22; (3) Defendant used showroom space in New York to display merchandise and solicit purchase orders, SAC ¶ 14; (4) Defendant sold merchandise to retailers based in New York, SAC ¶ 17; and (5) Defendant has a "factoring agreement" with a "discount factor financial intuition [sic] that has offices in New York City." SAC ¶ 42.

"To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) the defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity."  *Licci ex rel. Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 168 (2d. Cir. 2013) (internal citation omitted).  For purposes of the New York long-arm statute, transacting business means "purposeful activity- some act by which the defendant purposefully

7

avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *American Girl, LLC v. Zembra*, 118 F.4th 271, 277 (2d Cir. 2024) (internal citations omitted). Ultimately, "the overriding criterion in determining whether an entity transacts any business in New York within the meaning of the statute is whether the entity purposefully avails itself of the privilege of conducting activities within New York." *Rosenblatt v. Coutts & Co. AG*, 750 F. App'x. 7, 9–10 (2d Cir. 2018) (summary order); *see also American Girl*, 118 F.4th at 277 ("[T]he overriding criterion necessary to establish a transaction of business . . . is that a non-domiciliary must commit an act by which it purposefully avails itself of the privilege of conducting activities within New York") (internal citation omitted).

In order for the claim to "arise from" the Defendant's contact with the forum, the claim must be "in some way arguably connected to the transaction." *Peterson v. Bank Markazi*, 121 F.4th 983, 1005 (2d. Cir. 2024); *Licci*, 732 F.3d at 168 ("the 'arising from' prong . . . requires a 'relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former . . . .' "). This is satisfied "when there exists an articulable nexus or a substantial relationship between transactions occurring within the state and the cause of action being sued upon." *Spetner v. Palestine Investment Bank*, 70 F.4th 632, 643 (2d Cir. 2023). However, "not every conceivable connection to a New York transaction is substantial enough to confer jurisdiction." *Daou v. BLC Bank, S.A.L.*, 42 F.4th 120, 130 (2d Cir. 2022).

    *1. Defendant's Use Of The "Port of New York"*

As the Court previously warned Plaintiff, allegations of Defendant's use of the "Ports of New York," which is in reality the "Ports of New York *and* New Jersey," is insufficient to serve as the jurisdictional basis for New York courts if the port used is actually located in New Jersey. *See Style Stitch, Inc. v. Avyan Grp., LLC*, No. 1:23-CV-10701(MKV), 2024 WL 3730129, at *4

(S.D.N.Y. Aug. 7, 2024) (". . . courts in this District have consistently declined to find personal jurisdiction in New York where the shipments at issue were actually loaded or discharged at a New Jersey port."). The Court permitted jurisdictional discovery in order for the parties to determine whether the goods were in fact delivered and shipped to a port based in New York or a port based in New Jersey.

In an attempt to support personal jurisdiction over Defendant, Plaintiff included in the Second Amended Complaint that a shipment with the Multimodal Transport Document No. TF/NYK/3320 was imported into the port of New York. *See* SAC ¶ 21. Tellingly, Plaintiff did not indicate in the Second Amended Complaint what terminal or port in New York the shipment was delivered to and instead Plaintiff merely alleged, once again, that the goods were imported into the port of New York. This allegation presents the same issue the Court raised its prior opinion and the entire reason the Court granted jurisdictional discovery. Accordingly, even after the Court permitted jurisdictional discovery, Plaintiff has failed to allege sufficient facts with respect to the port(s) utilized by Defendant to serve as the jurisdictional basis for New York courts. *See Style Stitch, Inc.*, 2024 WL 3730129, at *4–5; *see, e.g., Salmassi e. Kfr. V. Euro-American Container Line Ltd.*, No. 8-CIV-4892, 2010 WL 2194827, at *5 (S.D.N.Y. June 1, 2010) (finding no jurisdiction in New York where the only alleged contact was the loading of a ship at the Port of Elizabeth, a New Jersey port that forms part of the "Port of New York"); *Nursan Metalurji Endustrisi A.S. v. M/V/ TORM* GERTRUD, No. 07-CV-7687, 2009 WL 536059, at *3 (S.D.N.Y. Feb. 27, 2009) (finding that use of a port in New Jersey is "not jurisdictionally significant simply because New Jersey ports form part of 'the Port of New York' "); *International Terminal Operating Co., Inc. v. Skibs A/S* Hidlefjord, 63 F.R.D. 85, 87 (S.D.N.Y. Oct. 1, 1973) (noting that the treaty governing the borders of New York and New Jersey explicitly states that the "wharves,

9

docks, and improvements" within New Jersey's borders fall within the exclusive jurisdiction of the state and finding no jurisdiction on that basis).

### 2. Defendant's Use Of New York-based Retailers and Freight Forwarders

As this Court held previously, Defendant's contacts with retailers, including the renting of showroom space, in New York cannot support jurisdiction because there are no allegations that Plaintiff's claims in this case "arise from" those contacts. *See Style Stitch*, 2024 WL 3730129, at *4 ("Plaintiff's complaint is replete with allegations that Defendant Avyan transacts business in New York *with retailers* . . . Where Plaintiff falls short, however, is its lack of factual allegations supporting the position that its claims in this case . . . *'arose from'* any of the unrelated business transactions Defendant may have had with non-party retailers in New York.") (emphasis in original).

In the Second Amended Complaint, Plaintiff makes new allegations that Defendant also utilized the services of two freight forwarders that were based in New York. SAC ¶¶ 10, 16. Plaintiff alleges that Defendant used one of these forwarders, Oriental Air Transport ("OAT") was the delivery agent for the TF/NYK/3320 shipment. SAC ¶¶ 21–22; Pl. Opp., Ex. A [ECF No. 32-1]. However, as the Court explained above Plaintiff has not sufficiently alleged that this shipment can support jurisdiction since the port of New York includes ports in New Jersey and the fact that OAT has a business relationship with Defendant and is based in Queens is insufficient to justify personal jurisdiction in New York.[2] *See Walden v. Fiore*, 571 U.S. 277, 286 (2014) ("[A] defendant's relationship with a plaintiff *or third party*, standing alone, is an insufficient basis for jurisdiction. . . . Due process requires that a defendant be haled into court in a forum State based

---

[2] Plaintiff does not allege any connection between the other Freight Forwarder and the claims asserted in this action. The Plaintiff similarly does not allege a connection between the "discount factor" and the claims asserted here.

10

on his own affiliation with the State, not based on the . . . contacts he makes by interacting with *other persons affiliated with the state*") (emphasis added).

### 3. Defendants Use Of A New York Bank Account

Plaintiff alleges that Defendant maintains a bank account at "Chase Bank in New York City, which [Defendant] use(d) to conduct business, including paying the Plaintiff." SAC ¶ 29. The Second Circuit has held that the "use of a New York correspondent bank account, standing alone, may be considered a 'transaction of business' under the long-arm statute if the defendant's use of the correspondent account was purposeful." *Licci*, 732 F.3d at 168; *see also Spetner*, 70 F.4th at 639; *Druck Corp. v. Macro Fund (U.S.) Ltd.*, 102 F. App'x 192, 194 (2d Cir. 2004) ("proof of one transaction in New York is sufficient to invoke jurisdiction . . . so long as the defendant's activities . . . were purposeful and there is a substantial relationship between the transaction and the claim asserted"); *Official Committee of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 68 (S.D.N.Y. 2016) ("The Bank's purposeful use of correspondent bank accounts in New York constitutes a 'transaction of business' within New York"). This reasoning has been expanded to include non-correspondent accounts. *See Eldesouky v. Aziz*, No. 11-CV-6986, 2014 WL 7271219, at *5 (S.D.N.Y. Dec. 19, 2014) ("Subsequent cases in this district have applied this principle to non-correspondent bank accounts as well"); *see also Ge Dandong v. Pinnacle Performance, Ltd.*, 966 F. Supp. 2d 374, 382–83 (S.D.N.Y. Oct. 17, 2013) (applying the *Licci* standard to a non-correspondent account of a financial institution). Taking Plaintiff's allegations as true, Defendant used the New York bank account to pay business expenses,

including initiating wire transfers to pay Plaintiff, SAC ¶ 29, which qualifies as the "transaction of business" under Section 203.

However, in addition to showing that Defendant transacted business in New York, Plaintiff also must demonstrate that the alleged transaction(s) relate to the asserted legal claim. *See Licci*, 732 F.3d at 168 (the "arising from" requirement "requires a relatedness between the transaction and the legal claim"). For the claim to "arise from" the transactions made using this alleged New York bank account, Plaintiff must allege that an "actual transaction made through such an account formed part of the alleged unlawful course of conduct underlying the cause of action set out in the complaint." *Daou*, 42 F.4th at 130.

Here, Plaintiff pleads no such connection. Indeed Plaintiff does not plead any actual transaction from Defendant to Plaintiff through Defendant's Chase account related to the cause of action. A breach of contract action such as the one asserted here is inevitably based on the *absence* of a transaction from Defendant to Plaintiff and through Defendant's New York bank account. *See, e.g., Raad v. Bank Audi S.A.L.*, No. 24-840-CV, 2025 WL 1214139, at *2 (2d Cir. Apr. 28, 2025) (summary order) ("[T]he operative complaint fails to allege that any transaction with Bank Audi's New York correspondent bank accounts brought about the alleged injury. That is unsurprising given that the alleged injury—a Lebanese bank's failure to transfer funds from Lebanon to the United States—necessarily stems from the *absence* of such a transaction.") (emphasis in original). The reasoning is because "[a]t bottom, the New York transaction, however ardently promised, did not occur." *Id.* Plaintiff has failed to allege that an "actual transaction" was made in connection with this claim, and prior use of the New York-based bank account to pay

Plaintiff or use of the account generally for unspecified business cannot be used as a jurisdictional predicate in this case. *See Daou*, 42 F.4th at 132; *Raad*, 2025 WL 1214139, at *2.

Having examined all of the jurisdictional bases plead in the Second Amended Complaint and found none of them to be sufficiently alleged or valid, the Court concludes that Plaintiff did not meet the burden of including "an averment of facts that, if credited, . . . would suffice to establish jurisdiction over the defendant." *McGraw-Hill Global Education Holdings, LLC*, 295 F. Supp. 3d at 409. As such, this Court concludes that it does not have personal jurisdiction over Defendant.

### III.  Dismissal Instead Of Transfer Is Appropriate Here

Plaintiff requests that, if the Court concludes, as it has, that personal jurisdiction is lacking, that the Court in its discretion "transfer this case to a Court it believes that jurisdiction lies." Pl. Opp. at 4. Plaintiff in making this request does not identify a particular court that the Court should transfer this action to or provide any argument in support of its request to transfer.

A district court does have the discretion to transfer a case if doing so would be "in the interest of justice." 28 U.S.C. § 1406(a); *In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 257 F. Supp. 2d 648, 650 (S.D.N.Y. 2003) (quoting *Pares v. Gordon*, No. 91-CV-1344, 1992 WL 296437, at *2 (S.D.N.Y. Oct. 8, 1992)) ("The relevant inquiry under both § 1404(a) and 1406(a) is whether the 'interests of justice' militate in favor of transfer or dismissal."); *see also Corke v. Samiet M.S. Song of Norway*, 572 F.2d 77, 80 (2d Cir. 1978). When transfer is requested by a plaintiff as an alternative to dismissal, a key factor in the decision is whether the plaintiff would be time-barred from bringing a new action in the correct court. *See, e.g.*, *Daniel v. American Bd. of Emergency Med.*, 428 F.3d 408, 435 (2d Cir. 2000) ("A 'compelling interest' for transfer is generally acknowledged when a plaintiff's case, if dismissed, would be

time-barred on refiling in the proper forum"); *SongByrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 183 (2d Cir. 2000) (relying on the fact that the Plaintiff would be time-barred if dismissed to uphold a transfer order where the transferor court lacked personal jurisdiction); *Donner v. DER SPIEGEL Gmbh & Co. KG*, 747 F. Supp. 3d 681, 695 (S.D.N.Y. 2024) (finding that transfer was not warranted because Plaintiff's could refile suit in the proper venue without prejudice).

Here, the statute of limitations has not run on Plaintiff's claims and Plaintiff has ample time to refile suit in a proper court. As such, the Court declines to exercise its discretion to transfer this case. *See Donner*, 747 F. Supp. 3d at 695–96 ("the Court declines to exercise its discretion to transfer venue . . . This is not a case in which the statute of limitations would bar the plaintiff from filing the plaintiff's claims in a proper forum"); *In re Ski Train Fire*, 257 F. Supp. 2d at 650 ("Because plaintiffs will be able to easily rectify the jurisdictional defects by refiling in their preferred jurisdictions before the expiration of the limitations period, there is no compelling reason here to transfer rather than dismiss the actions").

## CONCLUSION

For the reasons explained above, Defendant's Motion to Dismiss is GRANTED and Plaintiff's claims are DISMISSED without prejudice to renewal in a court which could exercise personal jurisdiction over Defendant. The Clerk of Court is respectfully requested to terminate docket entry 31 and to close this case.

**SO ORDERED.**
**Date: September 23, 2025**
   **New York, NY**

_____
**MARY KAY VYSKOCIL**
**United States District Judge**